UNITED STATE DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

E▆▆ J▆▆, an Infant, by Parent
and Natural Guardian, KERRI JONES;

       Claimant,

-v-

UNITED STATES OF AMERICA;

       Defendant.

COMPLAINT
Case No.:
5:21-cv-00327 (TJM/ML)

Claimant E▆▆ J▆▆, an Infant, by Parent and Natural Guardian Kerri Jones, by and through their attorneys, DeFrancisco & Falgiatano, LLP, Charles L. Falgiatano, Esq., as and for a Complaint against the above-named Defendant, states as follows:

1. Claimant, Kerri Jones, Individually and as Parent and Natural Guardian of E▆▆ J▆▆, an Infant, (hereinafter 'E.J.') at all times mentioned herein, was and still is a resident of Cortland County, State of New York.

2. Kerri Jones is the Parent and Natural Guardian of Infant E.J.

3. Defendant, UNITED STATES OF AMERICA (hereinafter 'U.S.A'), at all times mentioned herein, employed doctors, residents, nurses, interns, nurse practitioners and other healthcare providers through FAMILY HEALTH NETWORK OF CNY, INC. (hereinafter 'Network') including TERRISSA MARTIN, M.D. (hereinafter 'Martin')

4. Defendant, UNITED STATES OF AMERICA (hereinafter 'U.S.A'), at all times mentioned herein, employed MARTIN through NETWORK.

5. Defendant U.S.A., at all relevant times mentioned herein, had a duty and/or obligation to render medical services, care and treatment to Claimants Kerri Jones and Infant Claimant, E.J. in accordance with good, usual and customary standards and/or practices.

6. That this claim occurred on June 24, 2019, June 25, 2019 and June 26, 2019, and on July 2, 2020, within two years of the accrued date an Administrative Claim Form for Damages, Injury or Death was sent via Certified Mail to Department of Health & Human Services, Office of General Counsel, Claims & Employment Law, 330 Independence Avenue SW, Mail Stop, Capitol Place, Washington, D.C. 20201. Attached hereto and made a part hereof as Exhibit 'A' is a copy the accompanying letter and affidavit of service.

7. The Administrative Claim was Received by Department of Health & Human Services with return receipt card. (Attached as Exhibit 'B'). That on January 5, 2021, Charlene Robinson of Department of Health & Human Services telephoned to again confirm receipt of the Administrative Claim.

8. That six (6) months has now passed since the claim was submitted to the Department of Health & Human Services, without a final disposition of the Claim.

9. That due to the fact that an administrative claim was timely filed and the Defendant USA and/or Department of Health & Human Services has failed to provide a final disposition of their claim, Kerri Jones on behalf of infant E.J. is now commencing their claim based on Federal Tort Claim Act Title 28, §1346(b)(1) against the above Defendant upon exhausting all administrative process.

**AS AND FOR A FIRST CAUSE OF ACTION**

10. Claimants repeat and re-allege the allegations contained in paragraphs 1 through 9 as if fully set forth herein.

11. On or about October 31, 2018, Claimant Kerri Jones began prenatal care with family practice physician Cinthia Elkins, M.D., PhD. (hereinafter Elkins) of Regional Medical Practice, P.C. (hereinafter P.C.) and Guthrie Cortland Medical Center (Guthrie).

12. On or about May 24, 2019, at or around 8:58 p.m., Claimant Kerri Jones went to the labor & delivery department of Guthrie with complaints of left-sided sharp abdominal pain. Decelerations were noted on the external fetal monitor. Laboratory results were reviewed by Elkins, and at or around 10:23 p.m. on May 24, 2019, Claimant Kerri Jones was discharged from Guthrie by Elkins.

13. On or about June 24, 2019, at or around 4:45 p.m., Claimant Kerri Jones was admitted to the labor and delivery department of Guthrie for induction at 40 6/7 weeks gestation. External fetal monitor and tocodynamometer were applied and Elkins was notified. Baseline fetal heartrate was 130, and Elkins was bedside at or around 5:40 p.m.

14. On or about June 24, 2019, at or around 6:29 p.m., Cytotec was administered by Elkins, and at or around 10:45 p.m., Cytotec was again administered and a vaginal exam revealed no changes.

15. On or about June 25, 2019, at or around 8:21 a.m., Elkins was at bedside and performed a vaginal exam which reveled membranes intact, -1 station, 2 – 3 cm dilated, 80% effacement, Tone-130, fetal heartrate baseline was 130, fetal monitoring strips revealed minimal to moderate variability, accelerations and decelerations were absent.

16. On or about June 25, 2019, at or around 1:28 p.m., Elkins was at bedside and performed a vaginal exam and Cytotec was administered for the third time. Blood pressure was 105/49, contractions were every 2 – 3 minutes, 90 – 180 seconds duration with mild intensity. Fetal monitoring strips indicated no accelerations or decelerations, with a baseline fetal heartrate of 150, with moderate variability.

17. On or about June 25, 2019, at or around 8:11 p.m., Martin received a text message from Elkins regarding induction of Claimant Kerri Jones and the plan was to start oxytocin. Martin noted that Elkins wanted to place an intrauterine pressure catheter due to difficult tracings.

18. On or about June 25, 2019, at or around 8:48 p.m., Elkins was at bedside and became aware of Claimant Kerri Jones' blood pressure of 128/98. Elkins performed a vaginal exam and artificially ruptured membranes. The subsequent fluid was meconium stained. Fetal heartrate was 145 with accelerations present, no decelerations. Contractions were every 2 – 4 minutes, 60 – 120 seconds in duration. At or around 9:00 p.m. on or about June 25, 2019, Elkins wrote that there were Category I strips, an artificial rupture of membranes revealed light green meconium; antibiotics were given as well as Pitocin, per protocol.

19. On or about June 25, 2019, at or around 9:29 p.m., Elkins was at bedside and Fetal heartrate was 150, fetal monitoring strips noted prolonged decelerations with moderate variability. At or around 9:34 p.m., Elkins stopped the Pitocin.

20. On or about June 25, 2019, at or around 9:35 p.m., Martin received a text message from Elkins stating that the tracings showed late decelerations. Martin noted that upon an at home review of the tracings, the tracings were consistent with recurrent variables with some prolonged decelerations, but "these resolved spontaneously with change in maternal position."

21. On or about June 25, 2019, at or around 9:35 p.m., Pitocin was restarted; at or around 10:00 p.m., variable decelerations and accelerations were present with a fetal heartrate of 150. At or around 10:40, tone was noted to be 95.

23. On or about June 25, 2019, at or around 10:47 p.m., tone was noted to be 60, Pitocin was stopped; at or around 10:54 p.m., Elkins was at bedside.

24. On or about June 25, 2019, at or around 10:56 p.m., Martin received a phone call from Elkins and as indicated in Martin's note of June 26, 2019 of at or around 12:48 a.m. Elkins "state{d} will be starting amnio infusion. Later received text that baby has bradycardia. Spoke with nurse on L & D @ 11:00 pm - called Code OB. Upon arrival, pt. was already in the OR. Proceeded with Cesarean Section."

25. On or about June 25, 2019, at or around 11:00 p.m., tone was noted to be 90, glucose was 87 and at or around 11:03, the nurse(s) of Guthrie wrote that Martin had called the unit for an update on patient status. They were instructed to call a Code OB by Martin.

26. On or about June 25, 2019, at or around 11:05 p.m., a Code OB was called.

27. On or about June 25, 2019, at or around 11:11 p.m., Claimant Kerri Jones was taken to the operating room by Martin with Elkins as the assistant. A brief operative note by Martin described the incision, then went on to note that "the infant's head was delivered with the vacuum. ... the cord was noted to be nuchal and reduced and the infant was delivered. ... Apgars of 1, 4, & 6. The male infant weighed 7 pounds, 9 ounces, 55 centimeters in length and a head circumference of 37 centimeters." Placental pathology revealed meconium staining, no chorioamnionitis, a tri-vascular umbilical cord with no funisitis, third trimester chorionic villi and placental infarcts and intervillous thrombi that occupied approximately 7% of the total parenchyma. A cord pH was ordered but not resulted.

28. On or about June 25, 2019, at or around 11:00 p.m., Kelly Hirsch, PNP, FNP, IBCLC (hereinafter Hirsch) noted that she had been called for an emergency c-section due to fetal bradycardia. After the delivery, Hirsch noted that that Elkins brought the Infant (E.J.) to the warmer and that the infant was limp, pale with respiratory effort and heartrate in the 40s. Hirsch further noted that the infant received 4 minutes of CPR and that Apgars were "1, 4, & 4" and that the child was intubated and re-

intubated by anesthesiologist Dr. Eid. Hirsch's addendum to the note of June 25 included that there were no spontaneous neuro/motor activity with questionable seizure activity: "twitching of extremities and some lip quivering."

29.  On or about June 25, 2019, a nurse of Guthrie noted the birth timeline as follows:

> 6/25/19
> 11:34 Time of birth in OR, mother & general anesth. Compressions x 4 minutes.
> 11:38 no respirations O2 88% PPV (positive pressure ventilation) HR 157
> 11:39 K. Hirsch attempt to intubate, unsuccessful, continued on PPV
> 11:41 no respirations, PPV, O2 sat 93%, HR 144, suctioned
> 11:42 K. Hirsch intubation attempt, unsuccessful, continued PPV
> 11:44 K. Hirsch intubation attempt, unsuccessful, PPV continued
> 11:45 suctioned
> 11:50 Dr. Eid intubated w/ 3 s tube, measure 10 @ the lip
> 11:52 O2 sats decreased to 70, ET tube removed & PPV resumed.
> 11:53 attempt at intubation- Dr. Eid, successful.

30.  On or about June 26, 2019 at or around 12:25 a.m., Martin wrote that she had performed a low transverse cesarean section via Pfannenstiel incision due to post dates and fetal bradycardia. Martin noted that there were no complications.

31.  On or about June 26, 2019 at or around 2:39 a.m., Infant E.J. was transferred to the NICU of Crouse Hospital Health under the care of neonatologist, Dr. Bonnie Marr and Infant E.J. remained in the NICU of Crouse Hospital Health until his discharge of August 5, 2019. Treatment included 19 days of mechanical ventilation; TPA with IV fluids discontinued on day 26 of infant E.J.'s life; continuous EEG monitoring which revealed moderate encephalopathy on or about June 30, 2019; Phenobarbital and Keppra therapy; neonatal cooling for over 72 hours due to severe hypoxic ischemic event. An MRI of July 2, 2019 showed bilateral cephalohematomas and was compatible with hypoxic ischemic event.

32.  Upon information and belief, Defendant and their employees, agents, apparent agents, independent contractors, and/or staff members were careless and negligent and committed acts and/or omissions and/or deviated and/or departed from acceptable customs, standards and practices with regard

to the manner in which care and treatment was provided to Claimants Kerri Jones and Infant E.J. that caused significant injuries to Infant Claimant in June 2019 and at all relevant times herein and said negligence includes but is not limited to: carelessly and negligently hiring employees, agents, apparent agents, independent contractors, and/or staff members; carelessly and negligently supervising and/or controlling their employees, agents, apparent agents, independent contractors, and/or staff members; failing to heed signs that Infant Claimant was in distress; failing to recognize the signs and symptoms of fetal distress; failing to timely perform a cesarean section to deliver Infant Claimant E.J.; carelessly and negligently failing to contact a medical professional qualified and competent to provide proper obstetrical care and treatment to Claimant Kerri Jones; carelessly and negligently failing to contact a medical professional qualified and competent to provide proper care and treatment to Infant Claimant E.J. upon birth; failing to provide care and treatment to Claimants in accordance with generally accepted standards of care, in turn causing significant birth injuries to Infant Claimant E.J.; and in general, failing to provide the appropriate medical care and treatment in accordance with the generally accepted standards of the Defendant's profession.

33.     The aforesaid acts and/or omissions of Defendant constitute negligence, professional negligence and medical malpractice by said Defendant, without any culpable conduct on the part of Kerri Jones or Infant Claimant E.J. contributing thereto.

34.     Solely as a result of the negligence, professional negligence and malpractice of the Defendant herein, Infant Claimant E.J. was caused to endure severe pain and suffering due to significant injuries from birth including, but not limited to: birth depression; neonatal cooling; hypoxic ischemic encephalopathy; bilateral cephalohematomas; continuous EEG monitoring; seizures; Phenobarbital and Keppra therapy; the need for mechanical ventilation; TPA with IV fluids; significant neurological

damage resulting in neurological injuries; gastrointestinal issues including the inability to independently swallow; the need for a continuous GI tube; pain and suffering; and a generally impaired lifestyle.

35. As a result of the foregoing, Claimant, Mother and Natural Guardian Kerri Jones and Infant Claimant E.J. seek damages that exceed the jurisdictional limits of all lower courts that would otherwise have jurisdiction over the Defendant herein.

## AS AND FOR A SECOND CAUSE OF ACTION

36. Claimants repeat and re-allege the allegations contained in paragraphs 1 through 67 as if fully set forth herein.

37. The Defendant, their employees, agents, apparent agents, independent contractors, and/or staff members, failed to carefully, properly and adequately explain and disclose to Claimants, the nature, effects, consequences, complications, risks, and alternative procedures and treatment to the course of care and treatment undertaken by the Defendant to deliver Infant Claimant E.J.

38. Upon information and belief, a reasonably prudent person in Claimants' positions would not have undergone the course of treatment conducted by Defendant and would have undergone other treatment to avoid the significant injuries sustained by Infant Claimant E.J., if they had been fully informed of the nature, effects, consequences, complications and risks of the proposed treatment or non-treatment by Defendant.

39. By reason of the foregoing, Defendant failed to obtain Claimants' consent and/or informed consent prior to the institution of the course of treatment conducted by Defendant for the delivery of their Infant Claimant E.J.

40. The aforesaid failure to obtain an informed consent constitutes negligence, professional negligence and malpractice by Defendant without any negligence of the Claimants contributing thereto, and is a violation of the statutes and regulations of the State of New York.

41.  As a result of the aforesaid failure to obtain Claimants' informed consent as stated above, Infant Claimant E.J. suffered the injuries set forth herein.

42.  As a result of the foregoing, Kerri Jones, Individually and as Parent and Natural Guardian of Infant Claimant E.J. seek damages that exceed the jurisdictional limits of all lower courts that would otherwise have jurisdiction over the Defendant herein.

**WHEREFORE**, Claimants demand judgment against Defendant on all causes of action for the damages stated herein, in an amount to be determined, together with attorney's fees, court costs and the disbursements of this action.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 22, 2021

*(signed)* Charles L. Falgiatano
Charles L. Falgiatano, Esq.
DeFrancisco & Falgiatano, LLP
*Attorneys for Claimant*
6739 Myers Road
East Syracuse, New York 13057
(315) 479-9000